Mr. Corzine. Yes, may it please the court. John Corzine with the Wake Forest Appellate Clinic. Under Local Rule 46A, it's my pleasure to introduce the two 3L law students who will be appearing on behalf of the petitioners today. First, Augustine Markness, who will address the first issue in the court's questions. You'd like to, under custody, class of case can be addressed under section 2241. And second, Melissa Malone, who would like to address the second issue in the court's questions about whether BOP program statements using crime of violence language are unconstitutionally vague. Thank you, your honors. Thank you very much. Be glad to hear from you. All right, Mr. Martinez, are you first? Yes. All right, come on up. So before you get going, the government raises a standing argument here, and there have been some 28J letters that may affect that. So obviously, if there's no standing for a particular claim, the court wouldn't get to it. So I don't know whether that's your area or not, but you're the one that's up here. So let me ask you just to get started to make sure what's before us about a couple of these claims. There's an early release eligibility claim by both of the appellants. And as I understand the footnote and the reply brief, it appears that the government and Mr. Wilborn have agreed he is eligible for early release. So is that issue moot, essentially? Yes, your honor. Based on information that the government provided after the litigation started, it appears that Mr. Wilborn is indeed eligible for early release. But we do. So how about Mr. Wardell, if I've got the right one. Apparently, the government says he's going to be released in November, and that would seem to moot the early, assuming that that's when the court's opinion comes out, that that would moot his early release claim as well. Your honor, we don't have anything further to add to Petitioner Wardell's claim, but we would note that he would be subject to the notification requirements still. And as my colleague can address, that notification program statement, we believe, does contain unconstitutionally vague language. So that is not to say that that language is not contained in that program statement. One more standing question with regard to Mr. Wilborn and the notification of release requirement. He was convicted of a drug trafficking offense as well as other offenses. Is that correct? That's correct, your honor. Wouldn't that categorically prohibit his claim on the notification of All right. Takeoff for you. We're going to start. Thank you, your honor. I would like to add for Petitioner Wilborn that we do believe that he does have standing to challenge the program statement 5100.08, which directly determines how prisoners in the BOP's custody are classified. As my colleague can address, we believe that that program statement does contain unconstitutionally vague language. So the alleged injury here is that Mr. Wilborn was improperly classified, which has resulted in him being placed in a medium security facility as opposed to a low security facility and based on the unconstitutionally vague language. So we would ask the court to remand to the BOP so that he could be improperly reclassified and that could potentially result in a lower security designation, which would be the redress here, which is why we believe that there is standing specifically with Petitioner Wilborn. But moving to the issue of why challenges to custody classifications are cognizable under Section 2241, we submit that claims that specifically challenged custody classifications can be properly viewed as challenges to the execution of a sentence or alternatively as challenges to the conditions of confinement for a prisoner. This court has previously explained that challenges to the execution of a sentence are indeed properly brought under Section 2241 and that's in the United States v. Miller case as well as in Ray Vial. So we could also look at sister circuits that have interpreted what the execution of a sentence exactly entails. And the Third Circuit and the Second Circuit have explained that challenges to the type of detention as well as challenges to the place of imprisonment. If you do it on a numbers basis, you've got more circuits going against you than you have going for you. Well, those circuits have addressed the issue of whether conditions of confinement are cognizable under Section 2241, which we believe the court does not have to view Petitioner's claims here as conditions of confinement. They can be properly viewed as challenges to the execution of sentences. We believe that those are distinct ways to view the challenges to custody classifications. But I would also note that those circuits have relied heavily on PRISER, the Supreme Court case that dealt specifically with the distinction between Section 1983 as well as in habeas claims. And we believe that PRISER simply stands for the proposition that when a prisoner is attempting to challenge the duration of a sentence, that that claim must be brought in habeas, that that is the exclusive remedy. But in PRISER, the Supreme Court never held that conditions of confinement, for example, cannot be properly raised in habeas, for example. So the intent of PRISER was to clarify that there are certain claims that must be brought under habeas, but it was not intended to limit the scope of Section 2241 in any way. And at least to... PRISER was decided in 1973, and for whatever reason, the Supreme Court really hasn't decided in the ensuing 35 years to jump back into that and clarify. So I'm wondering why we would need to do that if we, for instance, decided that we could assume that these claims could be brought but dealt with them on the merits. So two points to that, Your Honor. There was a recent Supreme Court case in Ziegler v. Abbasi where the Supreme Court strongly suggested that specifically challenges to conditions of confinement can be brought in habeas. So that is a more recent case than PRISER. Of course, the Supreme Court did not directly hold that habeas is the appropriate avenue for conditions of confinement, but we do have some additional clarifying language from the Supreme Court. And also, this Court, on at least two occasions, has allowed conditions of confinement challenges to proceed in habeas. There's a McNair case as well as the Valera case where the Court did permit, for example, in McNair, it was a direct challenge to the imposition of solitary confinement. That could be viewed as a condition of confinement, and the Court proceeded to the merits. And that's why we also believe that there is a basis of cases which may be unpublished that seem to categorically say you can't bring these claims. Yes, Your Honor. There are some unpublished cases that have suggested that. There's the Brady v. Wilson case. That's from 2014. That also heavily related to the Rodriguez case in 2017. And isn't McNair, I think you're right, it is in the arena of confinement. But it was, it seems different than this. Maybe it is a difference that's not important enough in that it was not just the confinement. I think was there, it was the segregated nature of the confinement as well, which is not really what we're talking about in this case. Can you address that, please? Yes, Your Honor. So the McNair case did deal with that type of a claim, which is not directly, is not exact to this claim. But when we read that opinion, that dealt with the security designation, so to speak. And in this case, that is what Petitioner Walborn, for example, is specifically challenging is security designation, which is medium security as opposed to low security. So again, that's why we believe that McNair does provide some support for that claim. But in addition, other circuits as well have recognized that conditions of confinement can be brought in habeas. And for example, in Amir V. Obama, which is a D.C. circuit case, the court, again, there explained that Prizer was never intended to limit the scope of Section 2241. And the court directly held there that conditions of confinement can be brought in habeas. And that's, we believe that that is a better reason rule in light of the fact that Prizer was not intended to limit the scope of Section 2241, but also because of the Ziegler case, which has some strong language that suggests that conditions of confinement can properly be raised in Section 2241. And I would just like to add, the government has raised the fact that outside of habeas, there really is no other avenue for prisoners to challenge their custody classifications. And that would appear to be the case here if this court holds that these claims are not cognizable. There really is no meaningful remedy for petitioners like Don Welborn. Why is that the case? Why, there's an internal complaint procedure that would go through that within the prison system up to a certain point. And after that, is there a basis for appealing a decision as arbitrary and capricious? Your Honor, my time is, but if I can answer, yes. There, as the government also points out, decisions from the BOP are not subject to challenges under the Administrative Procedures Act. So that would be an arbitrary and capricious challenge. So because of that, we don't believe that after the internal remedies are exhausted, that this type of claim could be brought there. It also cannot be brought under Bivens largely because of the Ziegler case, which all but foreclosed injunctive relief, or excuse me, a Bivens action for conditions of confinement challenge. So again, in this case where we contend that Petitioner Welborn wasn't properly classified, his only avenue really is Section 2241. All right. Thank you very much, Mr. Martinez. You've got some rebuttal time. Ms. Malign, we'll hear from you. Thank you, Your Honors. May it please the Court, I will be addressing the second issue on appeal, that is that the phrase crime of violence and other phrases contained in the Bureau of Prisons Program Statements are unconstitutionally vague as applied in the custody classification process. Now, in three recent Supreme Court decisions, Johnson, DeMaia, and Davis, the Supreme Court has held phrases similar to crime of violence unconstitutionally vague. These phrases were found vague. Before we cut to the chase here, tell us why that is. In Beckles, Your Honor, the Court found that there were two different types of criminal laws that are subject to the void for vagueness argument. That is laws that define criminal offenses and laws that fix the permissible sentences for criminal offenses. Our argument is that the program statements come from a requirement in 18 U.S.C. 3621 that these program statements are part of the execution of the sentence and therefore are part of the second type of law in Beckles that fixes the permissible type of sentence. How do these fix that? They look pretty advisory to me. Your Honor, the Bureau of Prisons is not able to execute any sentences without performing this custody classification. And they're more than advisory because of the way that they... But that's not any different than a district judge who's going to do sentencing. I mean, if they don't follow the guidelines and discuss in some detail and either from the bench or in their opinion on how the guidelines apply, that has to go back. That's a procedural error. But yet in Beckles, the Supreme Court said that's not enough. And here it doesn't look like to me you even get that far. Your Honor, on the first page of Program Statement 5100.08, one of the objectives states that this program needs an objective and consistent system of classification. And what is provided in 5100.08, specifically the area that categorizes the history of violence, we do not have a consistent system of classification here. And where this process has been implemented by the Bureau of Prisons that has an arbitrary result, there is a due same phrase that the court has addressed in DeMaia and Johnson, crime of violence. And another phrase here in the program statements, the severity or the serious history of violence is present again. And these phrases, they're all the same hallmarks of the phrases that the Supreme Court has previously struck down. Specifically on page 16 of the addendum to the government's brief, the sixth area of custody classification, that is the history of violence, there's a phrase that the government contends is only a fact-specific inquiry, which admittedly, if there was only a fact-specific inquiry provided in this program statement, it would be constitutional. And this phrase states that the severity of violence is determined by the offense behavior, regardless of the conviction or finding of guilt offense. Now, if that's where the program statement ended with that fact-specific inquiry, there would be no problem. However, continuing down on the same page, just two paragraphs later in the program statement, we see the definition of a serious history of violence, where it states aggressive or intimidating behavior that is likely to cause serious bodily harm or death, including some domestic violence, intimidation involving a weapon, and incidents involving arson or explosives. Now, this portion of the program statement requires the court or the Bureau of Prisons to conduct the same type of ordinary case inquiry that the Supreme Court has held unconstitutional in Johnson, DiMaia, and Davis. Here, it's not a fact-specific inquiry, but rather asks merely for offenses or convictions that should be held as a serious history of violence. Well, all that aside, don't we have case law that says prisoners don't have a liberty interest in receiving or retaining their particular security, custody status? I'm sorry, Your Honor? I mean, do prisoners have a liberty interest in retaining or receiving any particular security or custody status? They don't have a particular interest in retaining a certain classification, Your Honor. However, they do have an interest in the due process of how that classification occurs. Specifically, they are entitled to proper notice, and they're entitled to not be subject to arbitrary enforcement. And here, because the program statement is internally inconsistent and contains both a fact-specific and an ordinary case approach, when that program statement is applied for the purpose of custody classification, we have a risk of arbitrary result. And therefore, prisoners, like the petitioners, are not on notice as to what level of risk constitutes the difference between a minor history of violence as opposed to a serious history of violence, and therefore, affects what classification they receive based on the points associated with those two different distinctions. Now, this internal inconsistency is the exact type of vagueness that the Supreme Court has held unconstitutional, first, because it yields arbitrary results. There are examples that we could think of where, for example, in a situation where an individual is convicted of a simple assault through the pleadings process, but perhaps the underlying conduct could have met the statutory definition for an aggravated assault, such as if he attacked someone with a weapon. Now, in that case, the Bureau of Prisons could look at the fact-specific inquiry and look at the underlying conduct and find a serious history of violence, or they could look simply at the offense and perform an ordinary inquiry, an ordinary case inquiry, and they could find only a minor history of violence. In that case, we can see the risk for this arbitrary result because the Bureau of Prisons could justify a decision on either direction of the minor history of violence and the serious history of violence based on the exact same program statement in 5100.08. Now, to determine whether the petitioner's offense qualifies as a crime of violence, the program statement prescribes the same inquiry that is unconstitutional. And a regulation violates due process if it fails to give ordinary people fair notice of the conduct that it punishes or is so standardless that it invites arbitrary enforcement. That's a quote from Johnson. Now, since these program statements, as applied to Petitioner Wilborn, do not provide clear guidelines and, in fact, are internally inconsistent, they fail to give the petitioner fair notice and, therefore, constitute a violation of due process. If Your Honors have no further questions, I'll conclude. Thank you very much. We appreciate it. Mr. Sandberg. Good morning, Your Honors, and may it please the Court. Jeff Sandberg for the United States. I think Judge Agee's colloquy with one of my opposing colleagues about what claims are before you was productive, and I'd like to continue that conversation a bit further. We didn't talk about the law enforcement notification claim for Mr. Wardell. He also is subject to law enforcement notification on a ground that has not been challenged in this litigation, which is the definition of crime of violence under 924C3A, which is the force clause, which is for offenses that have as an element the use, attempted use, or threatened use of physical force against a person or property or another. Here, Mr. Wardell was convicted of witness intimidation under Section 1513B1. That qualifies under the force clause. I haven't seen any argument from petitioners to the contrary, so I think that law enforcement notification claim is also not one that they have standing to bring. That leaves us just with the custody classification. We already winnowed out the early release claims earlier. For custody classification, the petitioners in the reply brief, I hear they're now elaborating an argument that they think Program Statement 5100.08 is unconstitutionally vague. I'm happy to respond to that argument if the Court wishes to reach it, but it wasn't an argument that was pressed in district court. It wasn't raised in the pro bono opening brief, and so we, in our brief, pointed out that although they said that they wanted to challenge their custody classifications, the legal theory that they pressed throughout this litigation was that language that looks like DeMaya or Johnson is unconstitutionally vague, and they never engaged until the reply brief with a text of 5100.08 or explained why they thought it looked like Johnson or DeMaya. In fact, the language doesn't look like Johnson or DeMaya at all. If you turn to page 17 of the addendum, as my opposing colleague correctly pointed out, the severity of violence is to be determined by the offense behavior of the individual. The whole point here is not to figure out what sentence should be imposed against somebody. It's to figure out what level of supervision someone should be given in prison. Are they somebody who, if they're not closely monitored, does their history of aggressive or intimidating behavior suggest that there might be trouble? On the standing issue alone, with the clarifications that we've pointed out, don't both Wilburn and Wardell at least, as their complaints are stated, don't they at least plead actual injury from those? So I get that there may be a merits-based defense, but have we addressed the standing issue sufficiently so that we go to the merits? To me, those are more 12b6 potential arguments than they are standing issues. That's not quite right, Your Honor. You're right that it's not the same standing analysis as for some of these other things. There just was no injury at all, right? And here the government doesn't contest that they're injured in the sense that they would like a lower custody classification. But part of the standing inquiry, the second prong of the standing inquiry is, is there a causal connection between the conduct that they have chosen to challenge in the litigation and the injury they're pointing to? So the injury they're pointing to, which we don't contest exists, is that they're in a medium security classification. But the program statement language in Johnson and DiMaia, and until the reply brief, they never elaborated any argument as to why they thought their custody classifications was traceable to that kind of language. They only pointed to the early release, program statements, law enforcement notification, other things. So if this court finds that they've forfeited a claim that would be causally connected, then you don't need to reach anything else in this case. If the court chooses to overlook their forfeiture and say, okay, now in your reply brief you're in custody classification. Now let's think about whether that's cognizable and habeas. Let's think about whether that's vague. I'd be happy to address and respond to those. But our submission is that nothing is properly before this court to decide except that there's no claim that they have standing to bring. If there are no further questions, we would ask that the judgments be affirmed. Well, let me ask you this before you sit down. If we agreed with you that Beckles resolves the case on the merits, is there any need for us to wander into the proper scope of the 2241? That's a complicated question, Your Honor. We think the availability of habeas corpus relief is a jurisdictional question. Courts have often talked about how a claim can be re-characterized. If a prisoner tries to bring a claim under habeas and it really should be under 1983 or vice versa, courts have the ability to re-characterize. Since the 1990s, that's become more complicated because Congress has given a lot of thought to what controls should be put in place for prisoner litigation. And those controls differ depending on whether it's a habeas claim or a civil rights claim. If it's a civil rights claim, for example, you're subject to the Prison Litigation Reform Act. The filing fees are higher. There's three strikes rules. Petitioners, in this case, in their informal brief and in their objections below, really clung to the idea that this should be a habeas claim and that they didn't want to bring this. They didn't want to be re-characterized as an equitable claim. So if they were interested in it being re-characterized as an equitable claim, the government would be happy to say, look, one way or another, the court would find jurisdiction to address their constitutional arguments. And you can rule in the government's favor on the merits. But given that petitioners themselves have said, the hill that we want to fight on is the question of whether this should be under habeas. And given that's a jurisdictional question, I'm not sure how easy it would be for the court, given the filing fee implications and everything else, to reach beckles. I did want to point out, my opposing colleague was talking about Ziegler versus Abbasi a little bit, but I think mischaracterized what that case said. First of all, it didn't say that prisoners can conditions of confinement cases in habeas. It reserved that question, again, as the Supreme Court had done a few times before. It also pointed out in Ziegler versus Abbasi that detainees may seek injunctive relief. And that's the avenue that we pointed to in our brief. It's true that there's no federal analog to Section 1983. So there's not necessarily going to be a damages remedy or maybe even a arbitrary and capricious remedy for every kind of challenge that a prisoner can bring. But if a prisoner is arguing that, on a going forward basis, something unconstitutional is happening to me and I want to enjoin that, there is relief for that. The Supreme Court in Farmer versus Brennan talked about the right of prisoners to bring injunctions to stop unconstitutional conduct. We cited SIMAT, a case from the Tenth Circuit that talked about this. So it's not as though there would never be any remedy. So my opposing colleague was simply incorrect about that. I think we've read your briefs and we understand your argument. Is there anything else you want to tell us? Just that the judgment should be affirmed, Your Honor. All right. Thank you very much. Thank you. Mr. Martinez, you've got a little rebuttal time. Thank you, Your Honors. May it please the Court. I'd like to address just three points on rebuttal. The preservation issue, we believe that the challenge to 5100 or Program Statement 5100.08 has been preserved. There were numerous times during the initial habeas petitions where the magistrate judge himself also addressed 5100.08. And the government in its reply brief also raised 5100.08. So based on the cases that we've cited in footnote three of our reply brief, we believe that that issue has been preserved. So it would go directly to standing, which is yet another reason why we believe that they're standing here to challenge those program statements. Can I, on the Wardell claim, do you dispute that notification would have been required under the clause that for the witness intimidation, as your colleague just mentioned, is there a challenge on that issue? Would that be an independent basis for notification? That would be an independent basis, so we don't dispute that. But again, with regard to Petitioner Wellborn, we do believe that particularly the challenge to 5100.08, how he was improperly classified, yes, Your Honor. Also, I'd just like to point out that- Just to be clear here, it looks like based on your immediate past answers now, the only thing we have left before us in terms of standing is the 5100.08 claims. That's correct, Your Honor. Okay. And also, I'd like to just also try to explain to the court that the government has a statutory obligation under 18 U.S.C. 3621 to classify prisoners who are in their custody. So the program statements, it's not something that they could just choose not to follow. Prisoners must be assigned custody classifications. So that distinguishes a little bit, we believe, from the sentence guidelines. As to Wardell, he hadn't been assigned any history of violence points, has he? No, Your Honor, he has not. Where's his standing? So again, Your Honor, we really don't have anything further to add to Petitioner Wardell. The government has raised that he was not classified under the serious history of violence. But Petitioner Wellborn, he was in fact assigned seven points at the time, which triggered his reclassified on remand. He would be eligible for low security designation, which could result in him being transferred to a low security facility. So unless you're... So on that basis, the only thing we have left is Wilburn's claim under 5100.08. That's correct, Your Honor. And unless the court has any other questions, I'd like to conclude. Thank you very much. I know you have something you wanted to ask. Um, I do want to note that, um, uh, Mr. Martinez and Ms. Malone are court-appointed and the court expresses its appreciation for the fine job that you all have done. And thank you and the, um, Wake Forest Clinic for undertaking this case. Uh, we're going to come down and greet counsel and then a very brief recess and go to our last case.
judges: G. Steven Agee, Henry F. Floyd, A. Marvin Quattlebaum Jr.